IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CRIMINAL NO. 3:07-02 |
| v. | ) | |
| | ) | |
| TOD DIVELY, | ) | JUDGE KIM R. GIBSON |
| Defendant. | ) | |

## MEMORANDUM OPINION & ORDER

This matter comes before the Court on the Government's Motion for Hearing on Disqualification of Counsel. Document No. 11. The Court conducted the requested hearing on June 27, 2007, and heard oral argument on the possible conflict of interest stemming from defense counsel Thomas M. Dickey's (hereinafter "Attorney Dickey") simultaneous representation of brothers Tye and Tod Dively in separate criminal proceedings. For the following reasons, the Court finds that a serious potential for conflict afflicts Attorney Dickey's representation of Tod and Tye Dively, necessitating his disqualification from both matters.

## I. BACKGROUND

On April 11, 2007, the United States filed a criminal information against Tye Dively that was docketed in this Court at Criminal Case No. 3:07-01. The information contained four counts of income tax evasion in violation of 26 U.S.C. § 7201 and alleged that Tye Dively substantially under-reported his income for the calendar years 2000 through 2003. That same day, the United States filed a substantially similar criminal information against Tye Dively's brother, Tod Dively, which was docketed in this Court at Criminal Case No. 3:07-02. Document No. 1. That information also alleged four counts of income tax evasion covering the years 2000, 2001, 2002, and 2003. Contemporaneously,

Tod and Tye Dively, both of whom had already retained Attorney Dickey's legal counsel, acted on their attorney's advice, signed separate plea agreements with the Government, and, in separate hearings, appeared before this Court to waive their respective rights to indictment and pled guilty to all charges. Accepting the pleas, the Court released Tod and Tye Dively on bond and scheduled their sentencing hearings for July 30, 2007.[1] The United States Probation Office has conducted presentence investigations and submitted its reports.

The circumstances of the brothers' cases are quite similar. Each was selling allegedly stolen property on the internet—in apparent coordination with one another—and failing to report the income therefrom to the Internal Revenue Service. Nonetheless, the plea agreements in these two matters are quite different. Although Tye Dively must forfeit certain personal property and inform the Government of any change in his economic circumstances, the terms of his plea agreement do not require that he assist the United States in any ongoing investigation. For its part, the Government is only obligated to move for a three-level reduction of Tye Dively's offense level pursuant to § 3E1.1 of the United States Sentencing Guidelines.[2]

In contrast, the more extensive agreement in Tod Dively's case stipulates that defendant must

---

[1] Tye Dively was subsequently arrested for allegedly violating conditions of his bond and remains in custody.

[2] § 3E1.1. Acceptance of Responsibility

(a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.

(b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by 1 additional level.

'assist law enforcement agencies in investigating violations of federal income tax laws and state laws regarding the receipt and sale of stolen property during the period from 2000 to the present allegedly committed by Tye O. Dively and others, hereinafter 'the investigation.'" Document No. 8, p. 2. The agreement obligates Tod Dively to appear for debriefing; provide all informational, documentary, and physical evidence relevant to the investigation; submit to a polygraph examination; and testify at any court proceeding. *Id.* In exchange, the United States has reserved its discretion to "apply for a formal grant of immunity under 18 U.S.C. §§ 6002 and 6003, in connection with Tod Dively's testimony," and has offered the possibility of a motion under U.S.S.C. § 5K1.1[3] or FED. R. CRIM. P. 35(b),[4] which could result in the Court substantially reducing Tod Dively's sentence.

Concerned about the propriety of Attorney Dickey's simultaneous representation, the Government apparently mentioned to counsel his possibly conflicting interests. Document No. 11, p. 2. Attorney Dickey indicated to the United States that both defendants were aware of the potential but had expressly waived any conflict. *Id.* It is unclear when these representations were made or at what point the waiver was secured.

The United States now indicates that "allegations have surfaced that [Tye Dively] may have been involved in additional criminal activity while on bond pending sentence. These allegations are currently being investigated by the Internal Revenue Service – Criminal Investigations, and the

---

[3] U.S.S.G. § 5K1.1 provides that "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines."

[4] According to FED. R. CRIM. P. 35(b)(1)(A), "[u]pon the government's motion made within one year of sentencing, the court may reduce a sentence if the defendant, after sentencing, provided substantial assistance in investigating or prosecuting another person. . . ."

Pennsylvania State Police." Document No. 11, p. 5. In the event any additional charges are filed against Tye Dively, the Government will invoke the provisions in Tod Dively's plea agreement requiring the latter's participation and testimony. In fact, the Assistant United States Attorney represented to the Court that around June 5, 2007, he sought to interview Tod Dively in an effort to glean information relevant to possible future charges against Tye Dively. That attempt failed, however, when Attorney Dickey did not respond. Furthermore, the Government indicated at the June 27 hearing that Tye Dively has yet to comply with the forfeiture requirements of his plea agreement and that, in the event Tye Dively fails to adhere to that agreement, the United States will pursue additional charges against him arising out of the conduct covered in the original information. According to the United States, these possibilities convert what has always been the potential for conflict in this case into an actual conflict.

Attorney Dickey argues that, while a potential conflict of interest has always existed in this case, his clients both knowingly and voluntarily waived any conflict. Defense counsel also contends that because both Tye and Tod Dively have already pled guilty and accepted responsibility for their alleged conduct, there no longer exists any possibility for divided loyalties. Document No. 13, pp. 3-4. Attorney Dickey maintains that both clients have fully cooperated with the Government, await only the imposition of sentence, and prefer that Attorney Dickey continue his representation. Lastly, Attorney Dickey offers his involvement with a state-court trial to explain his inability to arrange any meeting between the United States and Tod Dively.[5]

[5] The Court notes that the docket report of the Court of Common Pleas of Blair County indicates Attorney Dickey was in trial from June 11, 2007, through June 13, 2007, in the matter of *Commonwealth of Pennsylvania v. Jesse James Hooper III*, No. CP-07-CR-0000517-2006.

## II. STANDARD

An attorney's conflict in criminal cases is not merely a question of professional ethics, but imports a constitutional dimension as well. "'[T]he Sixth Amendment guarantee of effective assistance of counsel includes two correlative rights, the right to adequate representation by an attorney of reasonable competence and the right to the attorney's undivided loyalty free of conflict of interest.'" *United States v. Moscony*, 927 F.2d 742, 748 (3d Cir. 1991) (citing *United States v. Gambino*, 864 F.2d 1064, 1069 (3d Cir. 1988)). Moreover, the Sixth Amendment affords criminal defendants "a presumptive right to the counsel of [their] choice." *Id.* (citing *Wheat v. United States*, 486 U.S. 153, 159, 108 S. Ct. 1692, 100 L. Ed. 2d 140 (1988)). However, such a presumption is defeated by either an actual conflict or "a showing of a serious potential for conflict." *Wheat*, 486 U.S. at 164. In such instances, the Court may, in its discretion, reject the defendant's voluntary and knowledgeable waiver and require substitution of counsel. "The evaluation of the facts and circumstances of each case under this standard [are] left primarily to the informed judgment of the trial court." *Id.*

Under the auspices of Local Rule 83.3.1(B), attorneys practicing before this Court must adhere to the Pennsylvania Rules of Professional Conduct (hereinafter "R.P.C."), to which the Court now turns for guidance in measuring the threat to defendants' Sixth Amendment rights. *In Re Grand Jury Investigation*, 447 F. Supp. 2d 453, 458 (E.D. Pa. 2006) (using the R.P.C. as a standard with which to gauge the merits of a disqualification motion); *United States v. Stout*, 723 F. Supp. 297, 303 (E.D. Pa. 1989) (same). Attorney Dickey is thus bound to the mandate of P.R.C. 1.7 that

> a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
> (1) the representation of one client will be directly adverse to another client; or

> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

A lawyer need not withdraw from a conflicted representation in a criminal matter, however, if: 1) he reasonably believes he can still provide each affected client competent and diligent representation; 2) the representation is not illegal; and 3) each affected client gives informed consent. P.R.C. 1.7(b). The informed consent requirement is echoed in P.R.C. 1.8(g), which states that "[a] lawyer who represents two or more clients shall not participate in making . . . an aggregated agreement as to guilty or nolo contendere pleas, unless each client gives informed consent." The informed consent must be knowing, intelligent, and voluntary. *United States v. Luchko*, No. 06-319, 2006 U.S. Dist. LEXIS 82569, at *19 (E.D. Pa. Nov. 9, 2006).

## III. ANALYSIS

Of primary concern is that circumstances may force Attorney Dickey into cross-examining his own client, thus making his representation of one brother directly adverse to the interests of the other. In *Wheat v. United States*, the petitioner sought to replace his original counsel with an attorney who had represented two codefendants involved in the same criminal conspiracy. The United States Supreme Court endorsed the trial judge's decision to block that effort for two reasons. First, one of the codefendants had executed a plea agreement with the government that the district court had not yet accepted. In the event the court rejected that agreement, the petitioner would "probably" testify at the codefendant's subsequent trial. *Wheat*, 486 U.S. at 164. Second, the government intended to call the other codefendant as a witness in petitioner's upcoming trial. *Id.* In either case, the attorney's obligations to the witness would hamstring his ability to effectively represent the defendant with a

vigorous cross-examination. Noting that "[t]he likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict," the Court ratified the exercise of judicial discretion when reviewing the serious potential for conflict. *Id.* at 162-64. *See also United States v. Moscony*, 927 F.2d 742, 750 (3d Cir. 1991) ("[C]onflicts of interest arise whenever an attorney's loyalties are divided, and an attorney who cross-examines former clients inherently encounters divided loyalties.").

*Wheat*'s legacy is judicial skepticism that an attorney faced with the prospect of cross-examining his own client during a criminal proceeding can effectively represent either the witness or the defendant on whose behalf he performs the examination. For instance, the Third Circuit approved the disqualification of an attorney who faced the "very real possibility" that his representation of a criminal defendant would require the cross-examination of a former client. *United States v. Voigt*, 89 F.3d 1050, 1078 (3d Cir. 1996). *See also Moscony*, 927 F.2d at 750-51 (finding an actual conflict and affirming an order of disqualification where defense counsel's effective cross-examination of prosecution witnesses would necessitate the divulgence of confidential information the attorney learned while representing those witnesses); *United States v. Bradford*, 121 F. Supp. 2d 454, 456 (W.D. Pa. 2000) (disqualifying counsel where the government planned to call a witness that the defense attorney had represented in an unrelated case, noting that divided loyalties could produce a lackluster cross-examination). *But see United States v. Mazzone*, No. 99-363, 2000 U.S. Dist. LEXIS 17507, at **4-6 (E.D. Pa. Dec. 7, 2000) (denying a motion for disqualification where the government's witness, whom defense counsel also represented, would testify only to background facts and defendant had validly waived any conflict).

There is little question that a potential conflict has always existed in these cases; the Court need

now decide the level of its severity. Although technically neither codefendants nor coconspirators, Tye and Tod Dively are charged with substantially identical conduct. The presentence investigation reports attribute to defendants concerted action over a number of years to obtain stolen property for resale on a web-based auction site. Quite clearly, each brother likely has information regarding the other's criminal activity. Their interests therefore began to diverge the moment either one contemplated cooperating with the Government. Attorney Dickey's conflict arose at that point of divergence, which is encapsulated in Tod Dively's plea agreement. That agreement, which was signed on April 11, 2007, requires that Tod "assist law enforcement agencies in investigating violations of federal income tax laws . . . during the period from 2000 to the present allegedly committed by Tye. . . ." Moreover, Tod Dively's eligibility for a motion under U.S.S.G. § 5K1.1 is predicated on the provision of "substantial assistance in the investigation or prosecution of other persons." Document No. 8, pp. 2, 7. Thus, even if the terms of his plea agreement narrow the scope of the cooperation Tod is obligated to provide, the degree of assistance necessary to satisfy § 5K1.1 is limited neither in time nor subject matter.

There are two general contexts in which one brother might testify against the other. First, the Government has represented there is a strong possibility Tye Dively may be indicted on charges stemming from conduct that occurred following his April 11, 2007, release on bond. The Court first notes that Tod Dively's testimony in such a proceeding is not required under the terms of his current plea agreement, which only obligates Tod to facilitate the investigation of Tye Dively's criminal acts prior to April 11, 2007. Regardless, however, the Court is not concerned with conflicts that might affect Attorney Dickey's representation of either defendant in future criminal prosecutions. Even if Tod Dively, acting in furtherance of a potential § 5K1.1 motion, offered testimony in some future matter,

that would not compel Attorney Dickey's withdrawal from these cases.

But there nonetheless remains the possibility that one brother will testify in the matters already before the Court. Attorney Dickey argues that the likelihood of any such testimony is so highly attenuated that the Court cannot find any serious potential for conflict. The facts suggest otherwise, however. The Court finds credible Tye Dively's sworn testimony that he stands ready to satisfy the forfeiture requirements of his plea agreement. There is therefore little chance that breach of that agreement will result in the reinstatement of foregone charges stemming from his prearraignment conduct, which would require Tod Dively's testimony. However, on July 2, 2007, Attorney Dickey filed objections to the presentence investigation reports arguing that any enhancements under U.S.S.G. § 2T1.1(b)(1) were unjustified.[6] Document No. 15, p. 2. These objections, based on denials that either defendant knowingly sold stolen property, make the presentation of evidence at sentencing considerably more likely, presenting the "very real possibility" that animated the *Voight* court. If the Government were to call Tod Dively to the stand in an attempt to establish that Tye Dively knowingly sold stolen goods, an actual conflict between Attorney Dickey's divided loyalties would immediately arise, forcing the Court to continue the proceedings, disqualify Attorney Dickey from both representations, and appoint substitute counsel. The likelihood these events will transpire now compels the Court to act in accordance with its conclusion that a serious potential for conflict exists. Attorney Dickey is therefore disqualified from representing either Tod or Tye Dively. Concerns about Attorney Dickey's ability to effectively cross examine Tod Dively motivate his disqualification from the case against Tye Dively.

---

[6] According to that provision of the Sentencing Guidelines, "[i]f the defendant failed to report or to correctly identify the source of income exceeding $ 10,000 in any year from criminal activity, increase by 2 levels.

The risk that Attorney Dickey's loyalty to Tye Dively will influence the manner in which he counsels Tod Dively regarding the latter's cooperation with the Government suggests the propriety of disqualification in the second case.

The Court is cognizant that both Tod and Tye Dively have avowed under oath their satisfaction with Attorney Dickey's performance and their preference that he remain as counsel of record in both matters. Whatever the adequacies of these waivers, the Court must reject them. *Wheat*, 486 U.S. at 162-63 (allowing trial courts "substantial latitude in refusing waivers of conflicts of interest," even where only the potential for an actual conflict exists); *Voight*, 89 F.3d at 1079 (affirming the rejection of proffered waivers where the possibility existed defense counsel would cross-examine at trial government witnesses he formerly represented). In employing its instinct and experience, the Court finds that the interests of wise judicial administration and the preservation of judgments on appeal outweigh the defendants' desire that Attorney Dickey continue as their counsel. *Voigt*, 89 F.3d at 1075, 1078 (citations omitted). Defendants' early cooperation with the Government should mitigate any adverse effect that substituting counsel at this stage could effect.

The Court also finds that appointment of counsel is warranted in these cases. The presentence investigation reports detail the defendants' financial assets and liabilities and describe the substantial back taxes for which the brothers will be responsible. Moreover, both Tod and Tye Dively expressed to the Court their desire for the quickest possible resolution of these matters. Although defendants cannot abandon the caution embodied in the Sixth Amendment or circumvent this Court's interest in the integrity of its proceedings, the quick appointment of counsel preserves hope that the sentencing hearings in these matters will remain on the Court's calendar for July 30, 2007. Upon request, however,

the Court will consider either defendants' preference for privately retaining substitute counsel.

The Court also notes that arranging substitute counsel does not ameliorate every concern that stems from Attorney Dickey's divided loyalties. A lawyer's conflicts can have their strongest practical effect during the negotiation of plea agreements. *See, e.g., United States v. Laura*, 667 F.2d 365, 375 (3d Cir. 1981) ("'[I]n a case of joint representation of conflicting interests the evil—it bears repeating—is in what the advocate finds himself compelled to refrain from doing, not only at trial but also as to possible pretrial plea negotiations.'" (quoting *Holloway v. Arkansas*, 435 U.S. 475, 489-91, 98 S. Ct. 1173, 55 L. Ed. 2d 426 (1978))). The Court must therefore investigate the circumstances and results of those negotiations as they pertain to both Tod and Tye Dively. Accordingly, prior to the imposition of sentences on July 30, 2007, the Court will hold hearings during which the United States Attorney and substitute counsel will make presentations on any possible impact Attorney Dickey's simultaneous representation may have had on the Divelys' plea agreements.

**IV. CONCLUSION**

For the foregoing reasons, the Court finds that a serious potential for conflict has undermined the Sixth Amendment rights of those defendants prosecuted at both Criminal No. 3:07-01 and Criminal No. 3:07-02. Accordingly, Attorney Thomas Dickey will be withdrawn from those matters and the Court shall appoint substitute counsel. To ensure that Attorney Dickey's potentially divided loyalties did not influence the nature or content of the plea agreements that Tod and Tye Dively executed, the Court will hold appropriate hearings prior to defendants' July 30 sentencing hearings.

**AND NOW**, this 5th day of July, 2007, after considering the issues presented to the Court at the June 27, 2007, hearing in the above captioned matter, the Court **HEREBY DISQUALIFIES** Attorney Thomas M. Dickey from appearing on behalf of Defendant Tod Dively in Criminal No. 3:07-02.

The Court being satisfied that Defendant is entitled to the appointment of counsel pursuant to 18 U.S.C. § 3006A, **IT IS FURTHER ORDERED** that William J. McCabe of DeBernardo, Antoniono, McCabe & Davies, 11 North Main Street, Greensburg, PA 15601, (724) 836-0700, is appointed to represent Defendant Tod Dively in the above-captioned matter.

**IT IS FURTHER ORDERED** that a hearing in this matter is hereby scheduled for **July 30, 2007, at 11:00 a.m.**, to determine what impact, if any, Attorney Thomas M. Dickey's potential conflict of interest had on the plea negotiations in the above-captioned matter. If appropriate, the imposition of Defendant's sentence will follow immediately thereafter.

**BY THE COURT:**

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**

**Cc: All counsel of record**